IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00233-KLM

J.S.,[1]

    Plaintiff,

v.

KILOLO KIJAKAZI, Commissioner of Social Security,[2]

    Defendant.

_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court[3] on review of the Commissioner's decision denying Plaintiff's claim for Supplemental Security Income Benefits ("SSI"). The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).

    The Court has reviewed Plaintiff's Opening Brief [#20][4]; Defendant's Response Brief [#24] ("Response"), Plaintiff's Reply Brief [#25] ("Reply"), the Social Security Administrative

---

[1] Plaintiff is identified by initials only pursuant to D.C.COLO.LAPR 5.2(b).

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Mr. Kijakazi is therefore substituted for Andrew Saul as the Defendant in this suit pursuant to Fed. R. Civ. P. 25(d). No further action needs be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[3] The parties consented to proceed before the undersigned pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See* [#12].

[4] "[#20]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

Record [#13] ("AR"), and the applicable law and is sufficiently advised in the premises. For the reasons set forth below, the decision of the Commissioner is **REVERSED** and **REMANDED** for further fact finding.

## I.  Factual Background

Plaintiff applied for SSI under Title XVI of the Social Security Act in September 2018. AR 210-16.  Plaintiff highlights that he has been receiving SSI benefits nearly his entire life, and notes that as a child, he was in and out of psychiatric hospitals, residential treatment facilities, and group homes.  *Opening Brief.* [#20] at 1 (citing AR 526).  Plaintiff's benefits were terminated after he was married, as his wife's income made him ineligible under Title XVI's guidelines.  *Id*.  Thus, there was not a determination that he was no longer medically disabled.  *Id*.  Plaintiff seeks to reinstate benefits, asserting that he still suffers from severe mental health impairments including Bipolar Disorder, Major Depressive Disorder, and Autism Spectrum Disorder.  *Id*. at 1-2.

The agency denied Plaintiff's application (AR 120-23), denied it again on reconsideration (*id*. 127-39), and Plaintiff requested a hearing (*id*. 140-42).  The ALJ held a hearing in June 2020, and Plaintiff, his attorney, and a vocational expert appeared.  *Id*. 39-62.  In July 2020, the ALJ issued a decision finding Plaintiff was not disabled.  *Id*. 8-28.

The ALJ followed the five-step sequential evaluation process for disability claims. *See* 20 C.F.R. § 416.920(a)(4).  The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since September 12, 2018, the application date.  AR 13.  At step two, the ALJ found that Plaintiff has the following severe impairments:  "a depressive/bipolar disorder, an anxiety disorder, a personality disorder, and autism

spectrum disorder." At step three, the ALJ found that none of these impairments alone or in combination met or medically equaled a listed impairment. *Id*. 13-15.

The ALJ then turned to Plaintiff's residual functional capacity ("RFC"), finding that he has the RFC "to perform a full range of light work at all exertional levels, but with specified non-exertional limitations." Thus, the ALJ stated:

> The claimant can understand, remember, and carry out no more than simple instructions that can be learned in 30 days or less, and can sustain concentration, persistence, and pace to those simple instructions for two-hour intervals with normal breaks. He can have occasional, non-collaborative interactions with supervisors and coworkers, and can work in close proximity to, but cannot directly interact with, the general public. In addition, he can adapt to only simple and graduated introduced changes in the work setting.

AR 15.

At step four, the ALJ determined that Plaintiff has no past relevant work. AR 22. Considering Plaintiff's age (45 years old), education (high school), work experience, and RFC, the ALJ found at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *Id*. These jobs included representative occupations such as laundry worker, industrial cleaner, and hand packager. *Id*. 23.

The Appeals Council denied Plaintiff's request for review (AR 1-6), making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. *See* 20 C.F.R. §§ 416.1481, 422.210(a) (2019). This appeal followed.

## II. Standard of Review

Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*,

3

561 F.3d 1048, 1051 (10th Cir. 2009).  "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination."  *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."  *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010).  Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).  "Evidence is not substantial if it is overwhelmed by other evidence or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole."  *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

A court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan*, 399 F.3d at 1262.  However, it "may not reweigh the evidence nor substitute [its] judgment" for the Commissioner's.  *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

### III.  Analysis

Plaintiff argues that the Appeals Council erred in finding that new, material, and chronologically relevant evidence submitted from treating clinical psychologist Dr. Kelly Duncombe did "not show a reasonable probability that it would have changed the outcome." *See* AR 2; *Opening Brief* [#20] at 2, 5-11.  Plaintiff also argues that the ALJ erred in finding at step three that Plaintiff's mental impairments did not meet a listing because the ALJ failed to address consultative examiner Dr. Kent Rosengren's opinion.  *Id*. at 2, 11-13.  Finally, Plaintiff asserts that the ALJ's later assessment of Dr. Rosengren's opinion and weighing of the evidence in connection with the RFC did not cure that error.  *Id.* at 2, 13-17.

According to Plaintiff, the combination of his impairments continues, as it has throughout his life, to leave him incapable of maintaining full-time employment.  *Opening Brief* [#20] at 2.  Further, Plaintiff notes that the agency's own consultative examiner Dr. Rosengren agreed with this, finding that Plaintiff was markedly impaired in two of the four functional mental health categories, an opinion that Plaintiff argues should have resulted in a favorable determination at step three.  *Id.*  Instead, the ALJ found just that portion of Dr. Rosengren's opinion "unpersuasive" and determined that he had at most moderate limitations in those categories.  *Id*.  According to Plaintiff, the ALJ "then crafted an RFC that allowed for a finding that Mr. Salsedo could work."  *Id*.  Plaintiff argues that the ALJ committed reversible error, and that the case must be remanded for further fact finding.  *See id*. at 18-19.  The Court now turns to those issues, beginning chronologically with the ALJ's findings at step three.

A.      **The Step Three Determination**

"[W]hen a claimant has a medically determinable mental impairment, it must be evaluated by rating the degree of functional limitation in four broad functional areas: 'Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.'" *Armijo v. Astrue*, 385 F. App'x 789, 791-92 (10th Cir. 2010) (citing 20 C.F.R. § 404.1520a(c)(3)). "After rating the degree of functional limitation in each area, the factfinder then determines the severity of the mental impairment." *Id*. at 792 (citing 20 C.F.R.. § 404.1520a(d)). Then, at step three, "'the ALJ determines whether the claimant's impairment is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges as so severe as to preclude substantial gainful activity.'" *Drapeau v. Massanari*, 255 F.3d 1211, 1212 (10th Cir. 2001) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir.1996)).

Consultative examiner Dr. Rosengren opined that Plaintiff was "markedly limited" by his mental health impairments in the "ability to deal with and adapt to the normal pressures of a competitive work environment . . . which leads him unable to function in society, let alone in a competitive work environment." AR 539. More specifically as to Plaintiff's employment capabilities, Dr. Rosengren opined that Plaintiff's "ability to persist in work-related activities at a reasonable pace is deemed to be markedly limited by his mental health professions. *Id*. at 538. Dr. Rosengren additionally opined that maintaining effective social interactions with others, including supervisors, coworkers, as well as the public, is considered to be markedly limited by his mental health issues." *Id.*

Plaintiff asserts that Dr. Rosengren's opinion translates into a marked limited in two of the four areas of functioning; namely, in his ability to concentrate, persist, or maintain

pace and his ability to interact with others. *Opening Brief* [#20] at 12. The ALJ, considering the paragraph B criteria for various mental impairments, acknowledged that this criteria is met when the claimant has two marked limitations in the four areas of functioning. AR at 14. Plaintiff thus has pointed to objective medical evidence in the record that supports a finding that he meets a listing, *see Bernal v. Bowen*, 851 F.2d 297, 300 (10th Cir. 1988), and the Court finds that ALJ erred in failing to consider that "significantly probative evidence" in her step three findings. *See Clifton*, 79 F.3d at 1010.

The Court also finds other errors at step three. As to the ability to interact with others, the ALJ found at most only a moderate impairment solely on the fact that while Plaintiff's "mood was noted to be somewhat labile, alternating between irritable, anxious, and intense" at the consultative examination, Plaintiff "was contemporaneously noted to present as open and cooperative, in addition to maintaining decent eye contact[,]" and he was described as cooperative at subsequent mental status examination(s)." AR 14. In addition to the failure to address Dr. Rosengren's opinion and findings regarding the marked limitations as to this domain, the ALJ fails at step three to discuss other probative evidence in the medical records that does not support her finding.

For example, the record documented continuing anxiety, irritability, intensity, agitation, poor insight and judgment, and unorganized or loose thoughts. AR 536, 561, 568, 575, 713, 741-42. Further, Dr. Rosengren found that Plaintiff's speech was "almost pressured[,]" and conversation was often tangential. *Id*. 536. An ALJ is required at step three to demonstrate consideration of the evidence, particularly any that directly contradicts her findings such as differing limitation levels in the paragraph b criteria. "In the absence of ALJ findings supported by specific weighing of the evidence, [the court] cannot assess

7

whether relevant evidence adequately supports the ALJ's conclusion." *Clifton*, 79 F.3d at 1009.  In addition, the ALJ may not "'pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.'" *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quotation omitted).

Moreover, the ALJ's findings in reliance on observations in the medical records about Plaintiff being open, cooperative, and maintaining decent eye contact are routinely rejected by courts as providing a basis to discount functional limitations from mental impairments.  For example, the Tenth Circuit has found that a psychiatrist's observation of a claimant's relative stability under nonstressful circumstances and that the bipolar disorder was well controlled with medication did not undercut the physicians' opinions about the plaintiff's inability to cope with the stress of handling people and demands in the work setting.  *Washington*, 37 F.3d at 1440-41.  Similarly, the Eighth Circuit found that "the Commissioner erroneously relied too heavily on indications in the medical record that Hutsell was 'doing well,' because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity.  *Hutsell v. Massanari*, 259 F.3d 707, 712-13 (8th Cir. 2001).  Finally, in *Morales v. Apfel*, 225 F.3d 310, 319 (3rd Cir. 2000), the court found that a doctor's opinion that the plaintiff's ability to function was seriously impaired could not "be supplanted by an inference gleaned from treatment records reporting on the claimant in an environment absent of the stresses that accompany the work setting."  *See also Silva v. Saul*, No. 19-913 WJ/KK, 2020 WL 4220862, at *11 (D.N.M. July 23, 2020) (finding that "[t]he fact that Dr. Danto recorded generally unremarkable findings upon mental status examination on one occasion does not necessarily render her opinions that Ms. Silva has moderate and marked

limitations in particular areas of functioning inconsistent with and/or unsupported by the record.  The ALJ provided no explanation whatsoever connecting the evidence she cited to her conclusion that Dr. Danto's opinions should be relegated for lack of support and inconsistency with the other substantial evidence of record.").

The Court also finds that the ALJ's analysis of Plaintiff's ability to interact with others is superficial and does not recognize the fact that the ability to interact with others entails more than simply being cooperative in a treatment setting. The Social Security Administration Program Operations Manual System ("POMS") "provides guidance in the form of examples of what might fall under" the four domains of mental functioning.  *Powell v. Saul*, No. 3:18CV1488 (AWT), 2020 WL 1329696, at *5 (D. Conn. March 23, 2020). While the domain of interacting with others includes as an example the ability to cooperate with others, it includes the additional examples of

> asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness.

*Id.* (quoting POMS DI34001.032 – Mental Disorders – 03/24/2017 at 12.00E2).  The ALJ did not consider any of these types of issues, and the analysis of this domain was plainly inadequate.

As to the domain of concentration, persistence, or pace, the ALJ found (again without discussing or weighing Dr. Rosengren's opinion) that Plaintiff has only a moderate limitation based on the results of the WAIS-IV testing at the time of the consultative psychological evaluation.  AR 14.  The ALJ noted that the testing "showed at least average

range performance on all indices and subtests, . . . [and] [e]ven more significantly, the claimant was also noted . . ., on tests of concentration and attention, to perform serial sevens without error and spell the word 'world" both forwards and backwards."  *Id*.  However, the ALJ failed to explain how Plaintiff's performance on the WAIS-IV testing and to be able to perform serial sevens apply to his *persistence* in work-related activities at a reasonable pace, which was the marked limitation noted by Dr. Rosengren.  AR 538.

Moreover, the fact that Plaintiff performed at an average range or higher on the WAIS-IV testing (AR 14) does not necessarily translate into a finding that he is only moderately impaired in the domain of concentrating, persisting, or maintaining pace, and the ALJ erred in not explaining this rationale.  *See, e.g.*, *Silva*, 2020 WL 4220862, at *11.  This again is a domain that is much broader in its scope than acknowledged by the ALJ.  Thus, the POMS includes examples such as

> initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

*Powell*, 2020 WL 1329696, at *5 (quoting POMS DI34001.032 – Mental Disorders – 03/24/2017 at 12.00E3).

In short, the ALJ's analysis of the domains at step three that were found to be markedly limited by consultative examiner Dr. Rosengren failed to assess all the probative evidence and was not adequately supported.  The next issue is whether these errors are harmless in light of later findings in connection with the ALJ's RFC assessment and when considering Dr. Duncombe's letter provided to the Appeals Council.

**B.     Whether the Errors at Step Three Were Harmless**

The Commissioner's Response [#24] acknowledges that the ALJ failed to discuss Dr. Rosengren's opinion at step three, but argues that the error was harmless based on the ALJ's later analysis addressing Dr. Rosengren's opinion and finding his opinion as to marked limitations "unpersuasive." *See id.* at 18. The Commissioner asserts that the ALJ's decision was supported by substantial evidence, including the opinions of state agency physicians Dr. Heldman and Dr. Sexton. Further, it is argued that the agency did not err in finding that Dr. Duncombe's letter provided to the Appeals Council does not show a reasonable probability that it would have changed the outcome with the ALJ. *Id*. at 8-17.

The Court finds, contrary to the Commissioner's argument, that the error is not harmless. Harmless error analysis is applicable if "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005). This analysis is applied cautiously in the administrative context. *Id*. at 733. Here, the Court finds that if a correct analysis was made, a reasonable factfinder could have resolved the factual matters in a different way as discussed below.

First, the Court found that the ALJ's analysis was deficient at step three as she did not give adequate reasons for the domains that she found were not marked and did not consider all the probative evidence, including but not limited to Dr. Rosengren's opinion. This error was not cured by the discussion of the evidence and Dr. Rosengren's opinion in connection with the RFC, where the ALJ chose to give weight to the portion of the opinion that supported her findings at step three and found "unpersuasive" the part that did not. *See* AR 19-20. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (stating

11

that "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability").

The ALJ repeated the same rationale for rejecting Dr. Rosengren's opinion as to Plaintiff's marked limitations that she did in step three, including the reference to the results of the WAIS-IV testing and to Plaintiff being cooperative. AR 19. The ALJ again, however, erred in failing to explain how this translates into a finding that is inconsistent with the marked limitations found by Dr. Rosengren. Thus, while the ALJ did a more detailed analysis of the probative evidence in assessing the RFC, she still relied on normal mental status examinations that are not necessarily indicative of what Plaintiff can do in a work setting as discussed in connection with step three. *See* AR 18 (noting, for example, that Plaintiff "was pleasant with euthymic mood and appropriate affect of normal range and intensity", "normal/appropriate affect", calm/euthymic mood, normal/cooperative behavior and good eye contact, and normal/clear/coherent speech in July 2019, two months after Dr. Rosengren's examination; also noting that despite the fact that Plaintiff presented in March 2020 "with anxious mood with congruent affect, the claimant was appropriately dressed and had a beard that was nicely cared for, was cooperative and engaging and 'great' with non-verbal cues . . . .").

The ALJ also erred in finding that Dr. Rosengren's opinion was unpersuasive as to more severe limitations than noted in the RFC because Dr. Rosengren "consistently cited only to the claimant's 'mental health issues, including personality problems, anxiety, and mood problems, . . . which statements are indicative of reliance on the claimant's subjective complaints rather than on objective findings." AR 19. However, Dr. Rosengren made objective findings supporting his opinion from the testing he conducted. Moreover, the ALJ

12

failed to recognize that "[a] psychological opinion need not be based on solely objective 'tests'; those findings 'may rest either on observed signs and symptoms or on psychological tests.'" *Thomas v. Barnhart*, 147 F. App'x 755, 759 (10th Cir. 2005) (quoting *Robinson*, 366 F.3d at 1083). A psychological opinion also is dependent, at least in part, on the patient's subjective statements. *Id*. Dr. Rosengren opined from his examination that Plaintiff had diagnosed mental impairments, and the ALJ erred in discounting those medical findings. The ALJ's approach "impermissibly put the ALJ in the position of judging a medical professional on the assessment of medical data" and substitutes her judgment for that of Dr. Rosengren. *Id*. at 759-60 (citing *Winfrey v. Chater,* 92 F.3d 1017, 1022 (10th Cir. 1996)).

The Commissioner argues, however, that the ALJ reasonably found that Dr. Rosengren's opinion as to marked limitations was inconsistent with the medical evidence subsequent to his examination that demonstrated improved functioning with treatment. *Response* [#24] at 15 (citing AR 20). The Commissioner avers that this finding is well supported by the evidence because clinical findings subsequent to Dr. Rosengren's examination showed significant and continued improvement with treatment and medication, documenting largely normal examination findings. *Id*. (citing AR 561, 568, 575, 580-81, 713-14, 724, 733, 741-42). The Commissioner also argues that both state agency physicians Dr. Heldman and Dr. Sexton reviewed the medical records and found Plaintiff could function at least at the level found by the ALJ. *Response* [#24] at 15.[5] Dr. Sexton

---

[5] The Commissioner's reliance on Dr. Helton's opinion is misplaced because the ALJ found her opinion to be unpersuasive as "largely unsupported by the medical evidence of record that she reviewed." AR 21-22.

13

specifically found that Dr. Rosengren's opinion as to marked limitations was unsupported. *Id.* (citing AR 112). The Commissioner thus asserts that ALJ's findings are supported by substantial evidence standard.  The Court disagrees.

Even if later findings do support the ALJ's decision that Plaintiff improved after the consultation with Dr. Rosengren, and assuming that the opinion of Dr. Sexton lends support to the ALJ's decision, the Court finds that there is a reasonable probability that the new evidence from Dr. Duncombe that was considered by the Appeals Council and is now part of the record would have changed the result.   Thus, the Appeals Council must review a case when a claimant submits additional evidence to it after the ALJ's decision "that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision."  20 C.F.R. § 416.1470(a)(5).  If the evidence qualifies as new, material, and chronologically relevant and is considered by the Appeals Council (regardless of whether review was ultimately denied), it becomes part of the record the Court assesses in evaluating the ALJ's denial of benefits under the substantial-evidence standard. *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004).

Here, the Court finds that the letter from Dr. Duncombe is new, material, and related to the period at issue, and is part of the record since it was considered by the Appeals Council.  AR 2.  The Commissioner does not contest this.  Instead, the Commissioner argues only that there was not a reasonable probability that the additional evidence would change the outcome of the ALJ's decision.  *Response* [#24] at 11.  Thus, the Commissioner states that the letter "provides a description of symptoms, none of which is inherently in conflict with the ALJ's findings, and provides nothing in the way of an opinion

14

as to any particular functional limitations." *Id*. (citing AR 34-36).  Further, under the new regulations governing medical evidence, it is argued that Dr. Duncombe's letter does not constitute a "medical opinion" as it does not provide any statement as to what Plaintiff can still do despite his impairments or describe any specific limitations. *Id*. (citing 20 C.F.R. § 416.913(a)(2)).  According to the Commissioner, none of the symptoms described compel a finding as to any marked functional limitations. *Id*.  Further, the letter is purportedly consistent with a letter already in the record from Plaintiff's treatment provider Nurse Marroni, which outlines Plaintiff's diagnoses and accompanying symptoms just as Dr. Duncombe did. *Id*. at 12 (citing AR 789).  The ALJ found that even if Nurse Marroni's letter were deemed an opinion that Plaintiff could not engage in work activity, such would be a statement on an issue reserved for the Commissioner, and that the letter was vague and therefore unpersuasive.  AR 14.  This finding strongly suggests, according to the Commissioner, how the ALJ would have assessed Dr. Duncombe's similar letter.

The Court disagrees with the Commissioner's analysis, and finds that there is a reasonable probability that the letter from Dr. Duncombe would change the outcome of the ALJ's decision.  Dr. Duncombe's letter (AR 34-36) provides a detailed explanation from her treatment of Plaintiff as to how Plaintiff's mental impairments impact him, and she opines that "[d]epressive episodes and related symptoms significantly impact client's life and functionality on a daily level and interfere with his ability for higher functioning in society." AR 35.  Dr. Duncombe's report is particularly significant to the ALJ's determination that Plaintiff improved after Dr. Rosengren's examination (see id. at 18), and calls into doubt the ALJ's assessment.  This distinguishes Dr. Duncombe's letter from the letter from Nurse Marroni, as does the fact that Dr. Duncombe's letter provides a much more detailed

analysis of Plaintiff's limitations from his mental impairments. Further, Dr. Duncombe's letter and findings therein are consistent with and support Dr. Rosengren's opinion. *See Davison v Comm'r, Social Security Admin.*, No. 20-cv-01539-MSK, 2021 WL 2885941, at \*6 (D. Colo. July 9, 2021) (noting that supportability and consistency are the two most important factors in evaluating opinion medical evidence under the revised regulations promulgated by the agency for claims filed after March 27, 2017). Since the ALJ largely relied on the fact that Dr. Rosengren's opinions were not consistent with other medical evidence (see AR 18), there is a reasonable probability that the opinion of Dr. Duncombe may change that outcome.[6]

In addition, while the ALJ discounts the opinion of Dr. Rosengren on the basis of the fact that he presented with normal findings such as being open and cooperative, with adequate grooming and hygiene, Dr. Duncombe's letter provides an explanation that the ALJ was missing when she relied on these issues to find Dr. Rosengren's evaluation and conclusions unpersuasive. Dr. Duncombe, after treating Plaintiff for several years, provides great detail about how Plaintiff can often present with appropriate mood and affect but that his deeper thinking, communication and engagement are impaired. AR 34-35. Further, Dr. Duncombe clarifies that while Plaintiff has "developed strategies to manage social impairments for extended periods of time and will become aggressive and disassociative

---

[6] While the Commissioner asserts that Dr. Duncombe's opinion likely is not a medical opinion for purposes of the regulations, the Court is not so sure. The letter does appear to address impairment related limitations in connection with, for example, Plaintiff's "ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting." *See* 20 C.F.R. § 416.913(a)(2)(1)(B); AR 34-36. Additionally, medical evidence still needs to be considered, even if it does not constitute a "medical opinion" within the meaning of the regulation, just as the ALJ did in evaluating Nurse Marioni's letter that the Commissioner references. AR 20-21.

when overwhelmed." *Id.* Dr. Duncombe's statements are clearly probative evidence of the nature of Plaintiff's impairments and provide support to Dr. Rosengren's conclusion that he is markedly limited in two of the functional categories. The ALJ must properly evaluate Dr. Duncombe's letter on remand and reweigh the evidence accordingly.

Based on the foregoing, the Court finds that the error at step three was not harmless, and that a remand is required.

## IV. Conclusion

In conclusion,

IT IS HEREBY **ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **REVERSED** and **REMANDED** for further proceedings consistent with this Order.[7]

IT IS FURTHER **ORDERED** that Plaintiff is **AWARDED** his costs, to be taxed by the Clerk of the Court pursuant to Fed. R. Civ. P. 54(d)(1), D.C.COLO.LCivR 54.1, and 28 U.S.C. § 2412(a)(1). *See Knuutila v. Colvin*, 127 F. Supp. 3d 1146, 1153 (D. Colo. 2015).

IT IS FURTHER **ORDERED** that the Clerk of Court shall **enter** judgment in favor of Plaintiff and **close** this case.

---

[7] The Court finds that this case does not present a proper occasion on which to exercise its discretion and direct the award of benefits. *See Nielson v. Sullivan*, 992 F.2d 1118, 1122 (10th Cir. 1993). By reversing the ALJ's decision, the Court does not find or imply that Plaintiff is or should be found disabled. *See, e.g.*, *Knuutila v. Colvin*, 127 F. Supp. 3d 1146, 1152 n.5 (D. Colo. 2015).

Dated: March 17, 2022

BY THE COURT:

*[signature]*

Kristen L. Mix
United States Magistrate Judge